Mr. Justice Cox
delivered the opinion of the court.
This was an action of ejectment brought to recover a lot of ground in the city of Washington, and it comes here on a motion for a new trial on bills of exception and upon a case for insufficiency of evidence.
The ground in question was formerly owned hy one Charles Brooks, a colored man, who acquired it by purchase, and died leaving a wife; and upon the assumption that he left no relatives living who could inherit it, the wife claimed it as hers under our Statute of Descents, and the defendant claims title through the wife.
The plaintiff claims that he is the only surviving relative of the deceased, and is his heir at law, and as such entitled to recover the property.
The case which he undertakes to make by proof is, that he was a son of Mantroy and Ann Maria Green; that William Brooks was the brother of Charles Brooks, sr., and that Charles Brooks, sr., was the father of the propositus who died seized of the property. All the parties are dead except this plaintiff, according to his showing. In consequence, all the facts of pedigree and legitimacy can only be proved by the conduct and declaration of deceased persons, i. e., by family tradition.
The plaintiff, in the first place, starts out by showing that his mother and father were duly married. He presents their marriage certificate, and about that question there seems to be no dispute. He shows further that his mother *85 was the recognized daughter of William Brooks and Ann Brooks, which is sufficient prima facie evidence of the fact, and that she recognized them as her parents. He also shows that William Brooks, his grandfather, and Charles Brooks, his great uncle, recognized each other as brothers, living together at one time in the same house and then in adjoining houses, and that they were recognized by other people as brothers; all which is also prima facie proof of that fact. He also offers to prove this fact of relationship by declarations on the part of his own mother and his grandmother, and also declarations on the part of Charles Brooks’ wife, Cizzy Brooks, whom he claims as a great-aunt.
It is objected that the declarations of the mother and grandmother on the subject are not competent proof, and in fact that was substantially decided in this court in the case of Anderson vs. Smith, 2 Mackey, 215, upon the ground that declarations as to family matters are not competent, proof until the declarant is first shown aliunde to be a mem-'1 ber of the same family; that you cannot show a man to be a member of a family by his own declaration. But this evidence was admitted without objection, and there is no exception to its admission. And it is proved that Charles Brooks and his wife, Cizzy Brooks, did recognize the propositus, Charles Brooks, jr., as their son; and there is, therefore, prima facie proof that they were of the same family with him, and consequently their declarations would be competent testimony.
The declarations of the mother of Charles Brooks, the propositus, that her husband Charles was the brother of William Brooks, are competent proof of the relationship between William and Charles Brooks, so that all the links in the chain of relationship between the plaintiff and the propositus seem to have been made out, at least by prima facie proof, sufficient to go to the jury.
There was an instruction asked of the court to this effect : “The declaration of plaintiff’s mother and grandmother, now deceased, are not competent to establish relationship of themselves to Charles Brooks; and there being no other proof about it, the plaintiff cannot recover.”
*86 The first part of this instruction may have been correct, but on the whole it is incorrect. It says that there is no other proof on that subject; whereas we have seen that there is some proof in the conduct of the parties, recognizing each other, and proof of the declarations on the part of Charles Brooks’ mother, which is competent testimony on this same subject. Therefore that instruction was, we think, properly refused.
Another instruction asked for was :
“The declarations of plaintiff’s mother and grandmother are not sufficient to establish marriage of the parents of Charles Brooks; and for want of proof of marriage of Charles Brooks’ parents, the plaintiff cannot recover.”
The court was requested to say that there was no proof on the subject of Charles Brooks’ parents’ marriage, and the same may be said to apply to the grandparents of the plaintiff, William Brooks and his wife. On that subject, there is proof that they lived here as free people for a number of years, in the married relation, both William Brooks and wife and Charles Brooks, sr., and his wife. Each one of the brothers lived with his reputed wife, and thus were reputed to be husband and wife. That is clearly competent prima facie proof, to go to the jury, of actual marriage between the parties.
There was some attempt to prove by the declaration of Charles Brooks’ wife that they had been married according to the custom of slaves in Virginia. But whether this was so or not, it may be disregarded. We have held, in the case of Thomas vs. Ragan, that the fact that parties who had been slaves came to this District and lived as free people, in the relation of husband and wife, for some time, was evidence of actual, legal marriage between them. So that we think there was some evidence of this marriage ef William Brooks and of Charles Brooks to go to the jury; and if that is so, then the instruction was properly rejected. In the charge given to the jury, the judge said:
“ So that I instruct you that the evidence which has been admitted in this case is all competent under the issue made,” *87 which includes the declarations of the mother and grandmother of the plaintiff. That may be erroneous, but it was not excepted to at all; so that the questions of law are out of the case, and the only question is, whether, upon the whole, this evidence is sufficient to go to the jury, to prove the legal relationship of the plaintiff and propositus.
It is said that it is not sufficient, for this reason: admitting that it shows the relationship of the plaintiff to William Brooks, his grandfather, and the relationship of William Brooks to Charles Brooks, the father of the propositus, still there has been nothing proved as to the parents of these two brothers; that is, it has not been proved that the common ancestors of the plaintiff and propositus, the grandfather and grandmother of the plaintiff were ever married. If they were not married, of course, William and Charles Brooks being illegitimate, they could not inherit from each other, and the descendants of one could not inherit from the other. If they had been free white people, or free people of color, we think there is very good authority for the proposition that where two people recognize each other as brothers, and are shown to have done so at a period so remote that it is impossible to find living witnesses acquainted with their ancestors, the law will allow the jury to presume that fact, without which they would not be so related in law, viz., that their parents were lawfully married.
Eaton vs. Bright, 2 Lee, Eccl. Rep., 85, 161, is a case where everything had been proved except the marriage of the grandfather and grandmother, and where it was shown that the children recognized each other as brothers and sisters, and the court said it would be presumed that their parents were married when the period was too remote to prove the fact by living witnesses.
But it is said that these brothers were slaves, and, therefore, children of slaves; and that, as slaves could not contract marriage, there can be no supposition that the father and mother of William and Charles Brooks were ever married. On the subject of slave marriages, some light is thrown by the legislation of the State of Maryland and the *88 decisions of the Court of Appeals. There is a statute of Maryland in 1 VVV which imposes a penalty on any clergyman who shall celebrate the rite of marriage between servants without the consent of their masters ; and in the case of Jones vs. Jones, 86 Md., 45V, the court held that this act, by implication, made lawful the marriage of slaves with the consent of their masters; and although such marriage conferred no civil rights, it did make the issue of marriage legitimate.
Now, if the recognition of each other by two parties — the mutual recognition of two parties as brothers — in the case of free people, would allow us to infer a lawful marriage between their ancestors, we do not see why we cannot indulge the same presumption as to slaves, and infer such a marriage between their ancestors as would be lawful — that is to say, a marriage with the consent of their masters.
We think it just and proper to leave it to the jury to infer a marriage from the same state of facts as in the case of white people ; so that if these people had come from Maryland, we would find no difficulty in saying that the fact that these two brothers recognized each other as brothers, was sufficient to go to the jury as evidence that their parents, who lived nearly one hundred years ago, were married. They came, however, from Virginia, and the only question is, whether the same rule can apply here.
I have examined the digest of Virginia decisions to see if there is any information there in regard to it, but I find nothing. But I find similar legislation in Virginia to that of Maryland. There were several acts, more or less remote, the most recent ones those of 1V48 and 1V92. That legislation is substantially the same as that of Maryland; and the case in Maryland is authority that a marriage between servants, with the consent of the master, would be lawful; and for the reasons I have already stated, I think we can fairly infer that such a marriage took place between the ancestors of these parties, who had admitted and treated each other as brothers.
On these grounds we think there is some competent evi *89 dence in the case to go to the jury, of this mainly disputed fact, of which there was no direct evidence of the marriage of the common ancestors of the plaintiff and the propositus who died seised of the property; and we find no error in the act of the court in allowing that.evidence to go to the jury as sufficient in a legal sense. There is a conflict of testimony, but with that we have nothing to do.
The motion for a new trial is therefore overruled.
A motion for a reargument of this case having been made and granted, the case was again argued June 14,1886, upon certain points indicated in the opinion which was also delivered by Mr. Justice Cox.
The case of Green vs. Norment has been reargued before us upon certain questions. This was an action of ejectment wherein the plaintiff claimed as the only living heir of a colored man named Charles Brooks, who died, the owner of the real estate in controversy.
A number of questions about legitimacy arose in the case; but we held that, on the whole, there was sufficient evidence on behalf of the plaintiff to go to the jury, to connect him with the deceased as heir at law.
There was one feature in the case which was not dwelt upon in the opinion, and perhaps it ought to have been noticed. The point was made that although the plaintiff may have traced his relationship to the defendant, he offered no affirmative evidence, excluding any other heirs who may have preceded him; that is to say, that while he showed that he was the second cousin of the deceased, he did not show that the deceased had left no brothers or sisters or other heirs of the whole or half blood who might have been entitled in preference to himself; and the court did not, in the former opinion, discuss that question. We had an impression that the very general evidence in the case by the plaintiff himself, that he knew of no other heirs to the deceased hut himself, was some slight evidence to go to the jury on that question.
We have looked over the record again to see whether the *90 evidence produced by the plaintiff contains enough to go to the jury upon that question.
We find that it is impossible to reconcile the testimony for the plaintiff and that for the defendant on the question of pedigree; so that we shall not attempt to do that.
The only question is, whether there was any evidence introduced by the plaintiff, to go to the jury, to'make out his case. In the letters of the plaintiff’s mother, found in the testimony, there are statements as to the relations existing between the propositus and the plaintiff. The plaintiff received several letters from his mother in one of which she says:
“ Get some good lawyer and he will help you in getting cousin Charles Brooks’ place, for you are the only one that is living that is any relation to him, after my death. Tour Uncle Staves is dead, and that leaves you the only relation that I have or he has.”
There are other similar expressions found among these letters.
Now if that is competent testimony, it is evidence to show that there were no brothers and sisters of the propositus living, and no other relations at all except the plaintiff.
It was objected, however, that this was not competent testimony, upon the ground that no declarations as to family history are competent, until the declarant is proved aMu/nde to be a member of the family. We held that in the case of Anderson vs. Smith, 2 Mackey, 275.
Otherwise a party might declare his family into an inheritance to which they had no title at all. But where the declarant is proved aliunde to be a member of the family, then his or her declarations as to other family matters than his or her relationship are competent, he or she being dead.
There is evidence in this case aliunde that the plaintiff’s mother was a relative of the deceased, because it is proved that Charles Brooks, the propositus, and she recognized each other as first cousins and called each other cousins. Besides that, there are declarations of the mother of the propositus tending to establish the same fact. It may there *91 fore be assumed to be proven that the mother of the plaintiff was a member of the family.
That being established, it was competent for her to declare, in the intimate intercourse of the family, that the propositus had no other relative at all except herself and a son; that is, that he had no brothers or sisters. Her declaration on that point, we think, is competent testimony, unless it was excluded by another rule, which is that these declarations must be made at a time when the particular party has no interest in making them and before any controversy has arisen. If controversy has arisen, and the declarations are made in the interest of the declarant or with intent that they be used as testimony, they are not admissible at all.
But in this case it will be observed that this declaration was made before any controversy had arisen. It was evidently made without any expectation that it would be used in evidence, and made in the intimacy of family intercourse, and made merely for the guidance and information of another party; so that it seems to be free from objection which would exclude it under other circumstances. The mere fact that her son would be interested in maintaining this declaration does not seem to be sufficient to exclude it.
Upon this subject the following extract from 1 Phil. Ev., 270, seems to be to the point:
“The rule before mentioned, that ‘the words given in evidence are to be the natural effusion of the party, upon an occasion where his mind stands even without bias, to exceed the truth or to fall short of it,’ must be received with certain limitations. In the first place, declarations will not be invalidated, though made for the express purpose of preventing disputes in a family. Thus Lord Mansfield observes: ‘I have known advice given to a father and mother, to make attested declarations in writing under their hand, of the precise time of the birth of the bastard eigne and the subsequent marriage, to prevent controversy in the family touching the inheritance.' And the judges, in their answer to the third query in the Berkeley Peerage Case, say that an *92 1 entry in a Bible or any other book or any other piece of paper, would be admissible, notwithstanding it was proved that such entry, was made by a parent for the express purpose of establishing the legitimacy of his son, and the time of birth, in case the same should be called in question after his father’s death.’ They add that the particularity of the entry would be a strong circumstance of suspicion; but still it would be receivable, whatever the credit might be to which it was entitled. Upon this subject Lord Chancellor Brougham forcibly observes in Monkton vs. Attorney-General, 2 Russ. & Myl., 147, that Lord Mansfield’s remarks in Goodright vs. Moss sanction the doctrine, that the having a distinct object in view in making a declaration, by parol or in writing, even though the object can only be gained by afterwards using the declaration in evidence, is not sufficient to exclude the declaration. If the father or mother make a pedigree for the purpose of preventing disputes in the family, Lord Mansfield, C. J., said in effect that he would admit that pedigree in evidence, even when those very disputes arise; because it was not made with a view to their own interest, but to preserve a constat, as it were, on record, of facts peculiarly within their knowledge (which is one of the main grounds of admitting such hearsay evidence), and that the observation — that it was made for the purpose of settling family disputes, and may not have been so spontaneous and natural as some of the dicta of the judges would seem to require — shall only go to its weight and credit with the jury, and shall not preclude its admission by the court.”
That seems to fit almost exactly the present case. The declarations of this woman, the plaintiff’s mother, as to the absence of any other heirs except herself, to the propositus, are offered in evidence here by her son claiming through her. Therefore, we think the declarations of Mrs. Green, the plaintiff’s mother, were competent, after it was shown aliunde that she was related to the propositus, to show that there were no other relatives to the propositus except herself, and, after her death, her son, the plaintiff.
The motion for a new trial is therefore overruled.